JACOB EDWARDS

*v.*

ALPHEUS P. HALL *et al.*

VENDOR'S LIEN—*reserved by written contract.* Where the vendor of two quarters of land, upon an accounting of the sum due and increase of past interest, made a deed to his vendee for both tracts, taking back a mortgage upon one

of the tracts sold and a different piece of land, and on the same date the pur-
chaser conveyed the quarter not included in the mortgage, to another, who
executed to the original vendor a writing giving a lien on his tract in case
the purchase money was not made under the mortgage, it all being a part of
the same transaction, the vendor, after foreclosure and sale under the mort-
gage, will have a clear right to recover any deficiency due him from the sale
of the mortgaged land from such second purchaser.

WRIT OF ERROR to the Circuit Court of Knox county; the
Hon. ARTHUR A. SMITH, Judge, presiding.

In 1865 L. Douglass sold to C. M. Hall the north-west
quarter of section 36, and the south-west quarter of section 25,
township 9 north, range 3 east, giving a bond for a deed upon
payment of the purchase money, and taking notes therefor
payable on time at six per cent interest.

Before the purchase money was paid, C. M. Hall sold the
said south-west quarter of section 36 to his father, Chauncey
Hall, receiving payment therefor, and gave his bond for a
deed, which bond Chauncey Hall assigned to his son, A. P.
Hall.

Afterwards, on the 23d day of December, 1870, L. Douglass
executed and delivered to C. M. Hall a deed of the said two
quarter sections, and on the same day C. M. Hall executed
to Douglass his note for $4407.97, dated back to November 1,
1870, for the purchase money of the land, C. M. Hall then
taking up the old notes and giving Douglass a mortgage
dated back to November 1, 1870, to secure the payment of
that note of $4407.97 with ten per cent interest at one year's
time, on the said north-west quarter of section 36, township 9
north, range 3 east, and on the north-east quarter of section 31,
township 9 north, range 4 east; and on the same day C. M. Hall
conveyed the said south-west quarter of section 25, township
9 north, range 3 east, to A. P. Hall; and on the same day
A. P. Hall executed and delivered to Douglass a contract, as
follows :

" Whereas Cyrus M. Hall purchased from L. Douglass, S.
W. 25, Tp. 9 N., R. 3 east, and N. W. 36, T. 9 N., R. 3 east,

and I have purchased from said Hall said·S. W. 25, 9, 3, and whereas said Douglass has this day conveyed to said Hall said half section of land and taken a mortgage on said N. W. 36, 9, 3, and N. E. 31, 9, 4 E., to secure $4407.97, in one year from 1st November, 1870, with ten per cent interest, said sum being due for the purchase of said first named half section of land. Now, in consideration of the premises, I agree that in case said purchase money is not made under said mortgage, said Douglass shall have a lien therefor upon said·S. W. 25, 9 N., 3 east, above described. Dated December 23, 1870.

A. P. HALL."

Upon the margin appeared the following words :

" The deed from Douglass to Hall is dated October 16, 1870, but was delivered this day."

And C. M. Hall placed upon the back of the contract his agreement, as follows:

" Having sold and conveyed to A. P. Hall the within de-scribed S. W. 25, 9, 3 E., I agree to save him harmless from the within mentioned lien for said purchase money. Dated December 23, 1870.

C. M. HALL."

Subsequently Douglass assigned all these instruments in writing made to him, to Jacob Edwards, who afterward foreclosed the mortgage given by C. M. Hall, and the proceeds of the mortgaged premises on the foreclosure sale being insufficient to satisfy the mortgage debt, the purchase money for the lands sold by Douglass, in the sum of about $800, Edwards filed this bill in chancery against A. P. Hall on the above contract of the latter to Douglass, to obtain satisfaction out of the south-west quarter of section 25, township 9 north, range 3 east, for the deficiency which was failed to be realized from the sale of the mortgaged premises.

Mr. C. K. HARVEY, for the plaintiff in error.

Mr. ADRIAN L. HUMPHREY, for the defendants in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

Upon the face of the instruments in writing executed be-
tween the parties, complainant has a plain title to the relief
asked.   The defence set up in avoidance of the apparent force
of the contract in question of A. P. Hall is, that although all
the instruments bear the same date and appear to be parts of
one transaction, yet, that the contract of A. P. Hall was exe-
cuted at a time subsequent to that when the other instruments
were executed, and was entirely independent of them, and was
executed without any consideration whatever.

The only witnesses to the transaction which took place be-
tween Douglass and C. M. Hall, are Mr. Humphrey, and Doug-
lass and Hall themselves.

Mr. Humphrey testifies that he was present as the attorney
at law of A. P. Hall, having in his hands the bond for a deed
to the S. W. ¼ sec. 25 from C. M. Hall to Chauncey Hall,
assigned to A. P. Hall, to obtain a deed for the latter; that
Douglass agreed if C. M. Hall would compound the interest
at eight per cent and give him a mortgage on the two quarter
sections named in the mortgage, he would give a year's time,
and that he would do this for the purpose of releasing the
S. W. ¼ sec. 25, so that C. M. Hall could give a deed therefor
to his brother, A. P. Hall, and take up the bond; and that
C. M. Hall stated he would give that bonus for the purpose of
getting S. W. ¼ 25 clear, so as to give his brother a deed; that
not a word was said in regard to a lien on S. W. ¼ sec. 25, or
as to A. P. Hall signing any paper.   That when C. M. Hall
made the deed to A. P. Hall, the witness took it over to the
house of Chauncey Hall, where A. P. Hall was, and handed the
deed to the latter; that in the neighborhood of an hour after
Mr. Douglass came over to Chauncey Hall's with the contract
in his hand, said he did not know anything about whether there
was any incumbrance upon the N. E. ¼ 31, T. 9 N., R. 4 E, and
wanted A. P. Hall to sign the contract; that his recollection
was that Mr. Douglass said all he wanted of the paper was to

protect him against incumbrances, and witness said to A. P. Hall, "If he wants it for the purpose he states, it won't hurt you; I looked at it and read it, and A. P. Hall signed it."

The testimony of C. M. Hall, though less direct and explicit, is, in some respects, in corroboration of that of Mr. Humphrey, as that Douglass proposed to give him time and release S. W. ¼ sec. 25, and take another quarter section, and consented to do so on witness' agreement to pay him eight per cent compound interest; and that on the next morning, after the writings were executed, Douglass came to him with a representation that A. P. Hall had signed a paper giving him a lien on S. W. ¼ sec. 25, showing him the same; that witness did not, when the parties were present, hear any such instrument spoken of; that Douglass said he did not know anything about the title to the land, whether incumbered or not, and wanted witness to sign the agreement on the back of the contract, to hold his brother harmless, and he signed it upon the understanding with Douglass that the latter was to hold the instrument until he could see if the title was good.

A. P. Hall testifies that he knew nothing of the settlement between Cyrus M. Hall and Douglass; that the first conversation he had with Douglass about S. W. ¼ 25 was, it might have been, an hour or two hours after he got his deed; that Douglass came over to the house of Chauncey Hall, the father of witness, and said they had settled the thing all up, except he wanted witness to give him an instrument in writing that the papers were all right on N. E. ¼ 31, 9 N., 4 E.; that he did not know whether there was any incumbrance on the land or not, and if there was not, it would not hurt witness; and that witness, after hesitation, signed the instrument, concluding that if there was no incumbrance on the land it wouldn't hurt him.

Chauncey and Sarah Hall, the father and mother, and Morris Meeks, the brother-in-law of A. P. Hall, testify as to Douglass coming over to the house of Chauncey Hall some time after A. P. Hall had got his deed, in the same evening,

and getting the latter to sign the contract, making similar statements about incumbrance as testified by the other witnesses. This comprises the substance of the testimony in opposition to the contract of A. P. Hall.

Mr. Douglass, in his testimony for complainant, is most positive that he refused to take the mortgage and release S. W. $\frac{1}{4}$ 25; that he never agreed to release, and never did release it; that A. P. Hall, at the same time the other papers were made, and before the transaction was closed, executed to him the contract in question by which his lien for the purchase money was retained on S. W. $\frac{1}{4}$ 25; that the papers were all made and agreed to and executed as a part of the same transaction; that he never made any agreement different from what the papers express, and denies that after the deeds and mortgage were delivered he went some time subsequently to A. P. Hall and got him to sign the contract.

The deed from Douglass to C. M. Hall, though bearing a prior date, was admittedly delivered on December 23, 1870. The mortgage from C. M. Hall to Douglass, the deed from C. M. Hall to A. P. Hall, the contract from A. P. Hall to Douglass, and the agreement indorsed thereon of C. M. Hall, all bear date December 23, 1870, appearing to be made at the same time, and to be parts of one transaction. The attempt now made to destroy the effect of the contract of A. P. Hall, by the introduction seven years after the transaction, as is the case here, of the oral evidence of witnesses that the contract was not executed at the same time with the other instruments, but a space of time afterward of one or two hours, is somewhat startling as respects the security of instruments of writing as the memorial of parties' contracts, and should not be allowed to prevail, unless the evidence be of a very satisfactory character. The evidence adduced in defeat of this contract is marked with extreme improbability. Mr. Douglass was an attorney at law, and some years previous, as such, had foreclosed a mortgage in behalf of creditors against C. M. Hall and Chauncey Hall, upon N. W. $\frac{1}{4}$ sec. 36, and S. W. $\frac{1}{4}$ sec.

25, T. 9 N., R. 3 E., and taken the title to himself, the lands having been bid off for his clients in his name. He then sold the lands to C. M. Hall by contract, the notes for the purchase price being payable to Douglass, and running at six per cent interest. In 1870 a good deal of this paper had been running past due, and Mr. Douglass had determined to close the matter up, and pressed Hall upon the subject, which resulted in the execution of the several instruments on December 23, 1870.

The difference between six and eight per cent interest on the unpaid purchase money amounted, Mr. Douglass says, to about $500, and that this was paid by Hall, as a consideration for the extension of the time of payment one year; when the opposing testimony would make it appear that it was the consideration for the release of the S. W. ¼ 25 from liability for the purchase money, and taking the N. E. ¼ 31, T. 9 N., R. 4 E. in its stead.

Mr. Douglass says he knew nothing about the title or value of N. E. ¼ 31, and had never seen it, but that he knew the value of the land for which the purchase money was due.

A. P. Hall testifies that S. W. ¼ 25 was then worth $30 per acre, and N. E. ¼ 31 about $15 per acre. It is very unlikely that an attorney pressing the collection of long delayed money would make such a venture for a client, as testified to for the defence, to release, for the consideration of $500, the security for a large debt, of a quarter section of land, the value and title of which he well knew, and accept in its stead the insufficient security of another quarter section, as to the title and value of which he was entirely ignorant. It would not be a lawyer-like act.

Defendants' witnesses represent that some time after the other instruments had been executed, and the transaction entirely closed, Mr. Douglass came over to the house where A. P. Hall was, and then for the first time wished him to sign the contract as a security against there being any incumbrances on N. E. ¼ 31.

How happened it that Mr. Douglass should not have ex-

pressed this wish before or at the time he made his deed to C. M. Hall of N. W. ¼ 36 and S. W. ¼ 25, and when he had the power in his own hands to enforce compliance with it, and not delay until afterward, when it would be a mere matter of grace with Hall to give the contract or not, and then, when given, not be binding, as is insisted, for want of consideration? It is difficult to believe that an attorney would thus act, as testified.

Mr. Humphrey was present as an attorney at law, in the interest of A. P. Hall, to get a deed for him, under his bond therefor from C. M. Hall to S. W. ¼ 25. It is stated that he looked at the contract and read it, and on Mr. Douglass saying all he wanted of the contract was to protect him against incumbrances on N. E. ¼ 31, that Mr. Humphrey said to A. P. Hall, if Douglass wanted the contract for the purpose he mentioned it would not hurt Hall, and then the latter signed it. The contract says nothing about incumbrances; it is absolute, that in case the purchase money for N. W. ¼ 36, and S. W. ¼ 25, should not be made under the mortgage, then Douglass should have a lien therefor upon the land conveyed to A. P. Hall, the S. W. ¼ 25. As an attorney Mr. Humphrey must have known that the written contract would speak for itself, and that the statement of Douglass as to the purpose for which he wanted it would avail nothing as against the contract itself. How could he then, acting in the position he was, with respect to Hall, assent to his client gratuitously signing such a contract? Would he have done so without having it inserted in the contract that it was only as security against incumbrances on N. E. ¼ 31? The testimony is an impeachment of the capacity and faithfulness of the attorney.

The principal witnesses for the defendant testify that Douglass stated all he wanted of the contract was to protect him against incumbrances on N. E. ¼ 31, and that he would not put it upon record; and they testify that the writing appearing upon the margin of the contract was not there at the time A. P. Hall signed the contract, nor at the time C. M.

Hall signed his agreement on the back of the contract. The evidence is that the writings were all executed in the evening of December 23, at a place eighteen miles distant from the county seat and the recorder's office; that Mr. Douglass remained at that place that night; that he left the next morning, taking with him to file for record all the instruments; and that at $10\frac{1}{2}$ o'clock A. M. on December 24, 1870, all the papers were filed for record, this contract from A. P. Hall among them; and that at the time they were filed, the writing then appeared on the margin of the contract as it does now. If there was a promise not to record the contract, we can hardly think it would have been so quickly violated. There was scarcely sufficient opportunity, after the execution of the contract and signing the agreement on the back, and before the filing of it for record, to have written the words which appear on the margin; and there is the improbability that an attorney would have thus, unauthorizedly, meddled with a written instrument. This evidence imputes to an attorney dishonesty and criminality of conduct, with so little motive, that it is not readily to be believed in respect to one of good standing in the legal profession.

There may have been some interval of time between the execution of the other papers and that of the contract of A. P. Hall, and the latter contract may have been executed in a different place and yet have been part of the same transaction; and it may be but the idea or belief of witnesses that it was not, from the above named circumstances.

Mr. Douglass may very likely have made representations, as the contract expresses, that resort would not be had to the land of A. P. Hall, except in case the money could not be made out of the lands included in the mortgage, and this, at so great a distance of time, the witnesses, in their recollection, may confound as being a statement of Douglass that he wanted the contract from Hall only as security against incumbrances on one of the tracts included in the mortgage, the N. E. $\frac{1}{4}$ 31.

The evidence brought against the validity of the contract in question as making it an independent transaction, disconnected with that of the execution of the other writings, and so as without consideration, is unnatural, inconsistent and improbable, and comes quite short of being of a convincing kind.   Upon the whole evidence we are entirely satisfied that these papers should be taken to be, as they appear upon their face—to have been executed at the same time, and as parts of the same transaction; that the vendor's lien for the purchase money, existing at the time Douglas made the conveyance to C. M. Hall of the N. W. ¼ 36 and S. W. ¼ 25, T. 9 N., R. 3 E., was qualifiedly reserved as to the S. W. ¼ 25, T. 9 N., R. 3 E., and that the contract signed by A. P. Hall, to whom C. M. Hall at that same time conveyed said S. W. ¼ 25, expresses the fact of such reservation.

The decree will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

Mr. JUSTICE SCOTT, dissenting :

Concerning many of the important facts of this case, there is no disagreement.   In 1865, one L. Douglass sold to Cyrus M. Hall a half section of land, and gave him a bond for a deed on payment of the purchase money, which was evidenced by promissory notes bearing interest at the rate of six per cent per annum.   One quarter section of the land was afterwards sold by C. M. Hall to his father, Chauncey Hall, from whom he received payment in full; but as the purchase money to become due to Douglass had not been paid, and as Cyrus M. Hall had received no deed for the land, he made his father a bond for a deed when he himself should obtain a title to the land.   That tract was sold by Chauncey Hall to Alpheus P. Hall, the bond for a deed assigned to him, and the grantee placed in possession.

Afterwards, on the 23d day of December, 1870, Douglass conveyed the whole half section to Cyrus M. Hall, and on

the same day Cyrus M. Hall conveyed the quarter section he had previously sold to his father, to his brother, Alpheus P. Hall. It was agreed, in computing the amount that remained unpaid on the whole half section from Cyrus M. Hall, the interest should be calculated at eight per cent, compounded annually, instead of at six per cent per annum simple interest, as specified in the notes given in the first instance to secure the purchase money. As I understand the evidence, this mode of reckoning the interest made a difference in the sum due of about $500, which was added to the sum actually due, making a total sum remaining unpaid at that date of $4407.97. For that sum Cyrus M. Hall executed to Douglass his promissory note, payable in one year, with interest at the rate of ten per cent per annum, but, for some reason, dated the note back to November 1, 1870, and secured the same by a mortgage to Douglass on one of the quarter sections bought of him, and on another quarter section situated a mile east, but in another township. The quarter section that had been sold and conveyed to Alpheus P. Hall was not embraced in the mortgage. On the same day Alpheus P. Hall executed and delivered to Douglass a paper, in which it was recited that Cyrus M. Hall had purchased of Douglass the half section of land that day conveyed to him, and that he had conveyed one quarter section to Alpheus P. Hall; that a large sum still remain unpaid on the purchase money of the whole half section, and that in case the whole purchase money, with the interest, should not be made under the mortgage, Douglass should have a lien therefor on the quarter section sold to defendant Alpheus P. Hall. It is concerning this agreement the contention has arisen. Douglass was but a trustee for complainant, and afterwards assigned the note and mortgage he had taken from Cyrus M. Hall, together with the agreement of Alpheus P. Hall, to complainant, without recourse upon him. After the mortgage was foreclosed, and the premises sold, there remained unpaid on the note secured a sum less than $800. That sum of

course included whatever extra interest was added to the sum due when the mortgage was taken, together with subsequently accruing interest. This bill was then filed to enforce a lien under the agreement of December 23, 1870, against the land sold to Alpheus P. Hall, for the deficit that remained after the sale of the lands included within the mortgage.

Complainant insists that agreement was made at the same time and in consideration of the making of the deeds of that date, and as a part of the same transaction, to preserve a vendor's lien on the tract of land not embraced in the mortgage, that was sold to defendant Hall. On the other hand, defendant maintains it was not executed or delivered until after the deeds had been executed and delivered; that it was without consideration, and was made under the belief Douglass only wanted it by way of assurance that the title to the other tract of land included in the mortgage was free from incumbrance, and that the title was good in the mortgagor. This latter theory of the case seems to me to be better sustained by the evidence, is more consistent with the undisputed facts, and has for its support considerations of right and justice.

There is no controversy that an amount of near $500 was added to the sum actually due on the purchase money at the time the deeds were made; and unless it was given, as defendant alleges it was, as a consideration that Douglass would make a deed to Cyrus M. Hall for the entire half section, and would accept a mortgage to secure the unpaid balance on one quarter section, with other lands, that he might convey the quarter section sold to defendant, free from incumbrance, then the sum added as extra interest was a mere gratuity either to Douglass or his client—a proposition, it seems to me, too unreasonable to be entertained. It will not do to say that that large sum was added to the existing indebtedness in consideration of forbearance to enforce payment. For that favor the debtor was to pay interest at the rate of ten per cent per annum, instead of six per cent, as his original undertaking was. Had the $500 been taken in addition

to the ten per cent interest agreed upon, as for forbearance to enforce payment, the contract would plainly have been obnoxious to the statute forbidding usury—a result not within the contemplation of the parties.

Although the evidence is conflicting, a close analysis shows the weight to be with the finding of the court, that the taking of the agreement was an after-consideration, and was not done as a part of the transaction to preserve the lien the vendor had upon the land. Had that been the intention, the simplest as well as the usual way would have been to include this tract in the mortgage with others. On account of unfriendly relations that existed between defendant and Cyrus M. Hall, he was not present when the deeds were made, but was represented by counsel. Defendant is positive the agreement was not presented to him for his signature until after his deed had been delivered to him. His recollection is, the agreement was signed at his father's house, after he had given the deed from his brother into the care of his mother for safe keeping; and in that statement he is corroborated by a number of witnesses. The finding of the court on this branch of the case can not be reversed unless this court rejects the testimony of a number of unimpeached witnesses, and relies solely upon the testimony of Douglass, which I do not understand it would be justified in doing; nor is there any reason why that should be done. So far as can be known to this court, the witnesses are of equal respectability, and entitled to equal credit. The circuit court believed the greater number of witnesses, and decreed accordingly, and I am at a loss to know upon what principle this court can say it erred in its judgment.

At the time the mortgage was taken, the lands included in it, without the quarter section sold to defendant, were deemed by all concerned as ample security for the unpaid balance of the purchase money, if the title to the additional tract was in the mortgagor, and was free from incumbrance. The arrangement was closed up on the premises, distant from the county

records, and, as Douglass was not familiar with the condition of the title to that tract of land, it was a reasonable proposition he should want assurances from defendant, as well as Cyrus M. Hall, that the title was perfect in the mortgagor; and it was with that view, and for no other purpose, in my opinion, that defendant signed the agreement after he was advised so to do by Humphrey, who was present as his legal advisor. All the witnesses present concur that Douglass declared, by way of inducing defendant to sign the agreement, that was the only purpose for which he wanted it; otherwise, he was satisfied with the security afforded by the mortgage. What reason could exist why the mortgagor should add $500 to his indebtedness, unless it was to obtain a release of the vendor's lien on the quarter section sold to defendant? The deficit that remained after the sale of the mortgaged premises does not greatly exceed the $500 added, with the accumulated interest, and, under the circumstances proven, it would be inequitable to permit complainant to enforce a lien for it against the property of defendant.

There is no warrant in the evidence for the proposition asserted that defendant executed the agreement of December 23, 1870, to keep alive the vendor's lien. That had been waived by the vendor agreeing to receive an additional sum and taking security for it with what remained unpaid of the purchase money on other lands. The only reasonable explanation of the execution of the agreement is that given by defendant, that it was done by way of assurance to Douglass that the title to the additional lands included in the mortgage was perfect. Defendant knew the title was good, and could feel free to give such assurance under the belief he was incurring no liability. It is consistent with all the other facts and acts of the parties, about which there can be no misunderstanding, and is the only view that does justice between the parties.

It is apparent complainant has already realized from the mortgage sale nearly or quite all that was due him for the

purchase money of the entire half section, according to his original contract, and that which he is now seeking to collect consists, as we have seen, chiefly of that which was given to induce him to release the lien on defendant's land. If his mortgage security was not sufficient, he must look to Cyrus M. Hall for reimbursement of what remains unpaid, and not to the property of defendant.

The decree, in my opinion, is eminently just, and ought to be affirmed.